Minshall, J.
At the September term, 1891, of the court of common pleas of Sandusky county, to wit, September 8, an indictment was found by the grand jury against the plaintiff in error, 0.. H. Whiting. It contained two counts, the first charging him with receiving certain stolen property, knowing it to have been stolen, the second with larceny.
To this indictment he first filed a plea in abatement, to which a demurrer by the state was sustained; he next filed a motion to quash, which was overruled; he then filed a demurrer on the ground that it does not state any offense against the laws of the state, which was also overruled, and finally made a motion that the state be required to elect on which count it would proceed, which was overruled by the court. Exceptions were properly reserved to each of these rulings at the time.
He was then arraigned, and a trial had upon his plea of not guilty, which resulted in a verdict of guilty as charged in the first, and of not guilty as charged in the second, count of the indictment.
Various exceptions were reserved in the progress of the trial to the admission and rejection of evidence and to the charge of the court, which, with the rulings before stated, were assigned for error in the circuit court, as well as that the verdict is against the weight of the evidence. The circuit court affirmed the judgment. And, except as to the weight of the evidence, like errors are assigned here. We have carefully examined the various assignments of error, and such of them as are deemed of sufficient importance, we will proceed to consider.
1. As to the ruling on the demurrer to the plea in abatement: The plea avers that on or about the fifth day of September, at a time when the court was not in session, the grand jury, contrary to the oath of its members and'the instructions of the court, gave out that an indictment had been found by them against Whiting, and did then and there find *230 and present an indictment against him. And that after the finding and presentment of that indictment, and without the examination of any witness or witnesses whatever thereafter, the grand jury found and presented the indictment herein, and before the former indictment had been nollied; the former indictment being the same as the second, except as to the count charging grand larceny, which it did not contain.
The only question presented by this plea is, as to the power of the grand jury to find another indictment upon the same evidence, without the witnesses being re-sworn .and reexamined, and before the former indictment had been nollied: For the supposed misconduct of the jury in giving out that it had found an indictment, and presenting it when the court was not in session, could not, of itself, affect the validity of one subsequently found.
We are unable to see the force of the objection presented to this indictment by the plea. The witnesses to the transaction having been once properly sworn and sent to the grand jury, there is nothing in the reason of things, why the evidence obtained upon their examination, could not be acted on at any time during tbe session of the grand jury, for a purpose within its jurisdiction. The finding of the first indictment, could not exhaust its powers concerning the matter inquired of. All the proceedings of a grand jury may be regarded as in fieri until its final adjournment. And, hence, the grand jury in this ease, had the power upon the same evidence to find another indictment, with the same or different counts, if in its judgment, the administration of justice required it. It will not infrequently happen' that, for some defect in the indictment presented, or for the want of counts that should have been inserted to meet the possible aspects of the testimony when the accused comes to be tried upon the indictment, it is prudent to present a new indictment, adapted to such contingencies, leaving the prosecutor to nolli the first one, as was done in this case. And, in such case, to require the witnesses to be again subpoenaed, sworn and sent to the grand jury for re-examination, would be a require *231 ment of no value whatever to the accused, and unsupported by any reason. Pleas to an indictment based upon the grounds stated in this one, have met with little favor in this state. They are contrary to the policy which underlies the institution of the grand jury. Thus in Turk v. State, 7 Ohio, 240, where a similar plea was made, it is said: “ They,” the grand jury, “ are controlled by no technical rules of evidence. They must act according to the dictates of their own judgment and discretion, and whether a fact be proved by a witness, or disclosed by a fellow-juror, or from their own knowledge exists, it is their duty to present it to the court. They ought not to act rashly, nor without sufficient ground to believe, as the accusatory tribunal, in the existence of the fact they present. The grand jury are under the direction of the court, may be instructed by the court, and advised by the prosecuting attorney on matters of law. Of the facts, they alone must determine. The court neither keeps their conscience nor can control them in finding facts, when intending honestly to discharge their duty.” '
2. As to the ruling on the motion to quash. The motion contained two grounds: 1. The matter set up in the plea in abatement. 2. That the indictment was not indorsed a true bill by the foreman, as foreman. The fact being that it was indorsed by the foreman, John W. Smith, without the addition of his description, the description, “ foreman,” having been added by the clerk after the presentment of the indictment. The first ground was properly presented and disposed of on the plea in abatement — the matter presented not being-apparent on the record is not available on a motion to quash. Sections 7249 and 7250, Revised Statutes. The second ground presents no sufficient reason for quashing the indictment. It is true that an indictment must be indorsed “ a true bill ” by the foreman, and good practice requires that his description as such should be added to his name; but the omission is not fatal to the indictment. The foreman is appointed by the court, and his appointment is made a matter of record. Hence the court must take judicial notice as to who is foreman of the grand jury, and the addition of his description, *232 in an indorsement upon an indictment, is not, therefore necessary as a matter of law.
3. Did the court err in overruling the demurrer to the indictment? This presents the question most relied on by counsel for plaintiff in error. The first count is framed upon the provisions of section 6858, Revised Statutes, which, omitting the portions inapplicable to this case, read as follows: “ Whoever.....receives .....' anything of value which has been stolen.....knowing the same to have been stolen.....shall be deemed guilty of larceny and punished accordingly.”
It is charged in the first count: “ That C. H. Whiting . . . on. the third day of September, 1891, .... in the said county of Sandusky and state of Ohio, unlawfully and fraudulently did receive ” certain personal property giving a description of it, its ownership and value, laid in all at $287 “ then lately before stolen, he, the said C. H. Whiting, then and there well knowing said personal property to have been stolen as aforesaid, and that by the receiving of said personal property which had been stolen, knowing the same to have been stolen, and by force of the statute in such case made and provided, said C. H. Whiting is deemed to have committed the crime of larceny,” with the usual conclusion, against the form of the statute and the peace and dignity of the state.
The second count contains a charge of larceny of the same property in the usual form.
It is contended that, by force of the language “ shall be deemed guilty of larceny,” contained in the section on which the first'count is founded, the offense of receiving stolen property, knowing it to have been stolen, should be charged as a larceny. In other words that the design of this section was not to define a new offense, but, by legislative extension, to make the receiving of stolen goods under such circumstances, a form of felonious asportation, and so a larceny; in analogy to the doctrine of the common law, which regards each 'removal of the stolen property by the thief a separate *233 asportation, so that he may be indicted for larceny in any county into which he may take and carry the goods.
Although this view is supported by an argument of much force and ability on the part of counsel for the plaintiff in error, we are unable to adopt its conclusions. In the first place it does not consist with the provision contained in section 7227, Revised Statutes, that “an indictment for larceny may contain a count.....for receiving or concealing the same property, knowing it to have been stolen,.....and the jury may convict of either offense” This clearly indicates a legislative understanding that the two offenses are distinct, else why provide that an indictment for larceny may contain a count for receiving, etc., and that the jury may convict of either offense. If they are genetically alike, and not only may, but should, be charged in the same form, then this provision is not only useless but misleading.
Again, the object of all pleading is to advise the opposite party of the nature and character of the claim or charge made against him, so that he may come prepared to meet it with evidence. In the application of this principle it has become a settled rule, both in civil and criminal proceedings, that facts, and not mere conclusions from them, should be stated, otherwise the opposite party cannot know with any certainty, from the averments of the pleading, what he may be required to meet. This principle seems wholly disregarded in the argument of counsel for plaintiff in error. For, if the charge were larceny in the usual form, no conviction could be had on a case simply showing a receiving of the property, knowing it to have been stolen, without resorting to the fiction of a constructive taking — in other words, the implication of a fact that has no real existence, and which can only be made, as a conclusion of law from the facts of the ease. Therefore it is not only wrong in principle, but misleading, to charge that the defendant did steal, take and carry away certain property, when, as a matter of fact, it is known to the pleader that he did not, and the only purpose is to charge, that he received it, knowing it to have been stolen.
I have not overlooked the fact, that it is claimed, that the *234 indictment should charge in a direct form, that the accused received certain stolen property, knowing it to have been stolen, and that it should be then averred by way of conclusion, that the accused “in manner and form aforesaid” did steal, take and carry away the property of the person named. This, however, concedes the whole contention of the state. Where the facts have been averred, the law attaches the proper legal conclusions; and their averment in the indictment adds nothing to its substance as a pleading. And where they are not stated, their averment by way of legal conclusion is of no avail. This is too well settled to admit of controversy. See Fouts v. State, 8 Ohio St. 98, and authorities cited at p. 118. It was there held that an indictment for murder, defective in not containing a direct averment of an intent to kill, as required by our statute, was not helped out by the usual conclusion, found in indictments framed as at common law, in which it is averred that the accused, “in manner and form aforesaid ” etc. “did ” etc., “purposely, and of deliberate and premeditated malice ” etc., “ kill and murder, contrary to the form of the statute ” etc. And so, in Mann v. State, 47 Ohio St. 556, the indictment was held defective, because it did not directly aver that Mann had charged the prosecutors with maliciously administering poison to his colts, though it did charge, that he accused them of a crime punishable by law, namely, of administering poison, etc. The legal effect of the averment being simply to aver, by way of conclusion, that administering poison to colts is a crime punishable by law, though it may have been done innocently.
The case of Commonwealth v. Pratt, 132 Mass. 246, is much relied on in support of the argument for plaintiff in error. The indictment there was upon a statute declaring that an embezzlement should be deemed a simple larceny; and the court held that the indictment must charge that the defendant did feloniously steal, take and carry away the property which is the subject of the indictment. This may be a proper construction of that statute; but it does not seem consistent with the holding of the same court in Commonwealth v. Simp *235 son, 9 Metc. 138, where it is said, “ that the two offenses of larceny and embezzlement are so far distinct in their character, that under an indictment charging merely a larceny, evidence of embezzlement is not sufficient to authorize a conviction; and that, in case of embezzlement, the proper mode is, notwithstanding the statute to which we have referred, to allege sufficient matter in the indictment to apprise the defendant that the charge is for embezzlement. Although the party, in the language of the statute, “ shall be deemed to have committed the crime of simple larceny,” yet it is a larceny of a particular character, and must be set forth in its distinctive character. This accords with the construction we place on our own statute; the clear purpose of which is, as we think, not to make the offense of larceny and that of feloniously receiving stolen goods, identical in law, and so indictable by like forms of averment, but to provide that feloniously receiving stolen goods shall be punished as larceny; that is, where the property so received is of the value of thirty-five dollars and over, the accused on conviction shall be punished as for a larceny of a like sum, and where it is under that sum, the punishment shall be as for petit larceny. Hence the portion of this indictment to which objection is made on the ground of the generality of the averment, being mere surplusage, may be regarded as stricken out, and, as what remains sufficiently charges the offense of feloniously receiving stolen goods, knowing them to have been stolen, (since the word “steal” implies a felonious taking and carrying away, State v. Mann, 25 Ohio St. 668,) the demurrer was properly overruled.
The count demurred to is supported by approved precedents : Shriedley v. State, 23 Ohio St. 130, 138; Maxwell, Crim. Proc., 382, 383. Judge Wilson in the third edition of his work on the Ohio Criminal Code, p. 89, has, since the decision in Com. v. Pratt, added to the form given by him, “ so the jurors say that in manner and form aforesaid,” the accused “ did steal, take and carry away,” etc., but, in so doing he has, as we think, simply added to the phraseology of his form, without adding anything to its legal effect.
*236 4. As to the motion that the state should be required to elect on which count it would proceed: There was no error in overruling this motion. The code specially provides as before shown, that an indictment for larceny may contain a count for receiving the same property, knowing it to have been stolen. It is claimed, however, that it should have been averred to be the same property. It is shown by its description, its value and ownership, to have been the same property. This we think, in the absence of a motion to quash on that express ground, is sufficient.
This disposes of all the assignments, except as to the errors claimed to. have occurred at the trial. An examination of the transcript fails to disclose that the bill of exceptions was ordered to be made a part of the record. This is necessary to enable the court to review rulings made at the trial, and which do not otherwise appear from the record. But the plaintiff in error has lost nothing from this oversight, as, from an examination of the bill, we fail to discover any errors committed at the trial, for which the judgment should be reversed.
The two errors most relied on in this regard are: 1. The court erred in saying to the jury, “ in this ease there has been submitted the testimony of Eva West, who admits her complicity in the crime, the weight and degree of credit which ought to be given her testimony is a matter exclusively for your consideration,” the objection being to the language, “ who admits her complicity in the crime,” it being claimed that this should have been left to the jury, and not assumed by the court. Now it appears from the evidence that Eva West testified that she did take the ring, valued at over 1150.00, that it belonged to Mrs. West, and that she did not at the time intend to return it; and further testified to a state of facts, which, if believed, showed that the defendant, Whiting, received the property, knowing it to have been stolen and converted it to his own use. The jury were then told, that such evidence should be cautiously received and closely scrutinized by them. We fail to perceive how the accused could have been prejudiced by what the court said in this *237 regard. It was an observation made in his favor. It did not take from them the question, whether the girl was to be believed in what she stated in regard to her own connection with the offense; on the contrary, it submitted her entire statements to the jury as evidence to be cautiously received by them and closely scrutinized. 2. That the evidence showed, if believed, that the accused was an aider and abettor in the commission of the larceny, and that he could not, therefore, be lawfully convicted of the crime of receiving the goods, the latter being a separate offense. The fallacy in this consists in assuming that the jury must have believed, if they believed any part of the evidence, that Whiting was an aider and abettor of the larceny. The jury may have had doubts about this, and yet have fully believed that, though not connected with the stealing of the goods, he feloniously received them, knowing them to have been stolen. If this were so, then they rightly acquitted him on the second count, which was for larceny, and found him guilty as charged in the first. There is no such state of the evidence.as should have required them to find differently.
We see no error in the record, and the judgment is

Affirmed.