559 So.2d 1246 (1990)
Donald HOFFERT, Appellant,
v.
STATE of Florida, Appellee.
No. 88-3401.
District Court of Appeal of Florida, Fourth District.
April 11, 1990.
Rehearing and Clarification Denied, Certification Denied May 2, 1990.
T. Don Tenbrook, Fort Lauderdale, (withdrawn as counsel after oral argument) and Theodore S. Booras, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, David D. McLauchlin and Amy Lynn Diem, Asst. Attys. Gen., West Palm Beach, for appellee.
*1247 DELL, Judge.
Donald Hoffert contends the state failed to present sufficient evidence to support his conviction of second degree murder. He also contends that the trial court erred when it restricted cross-examination of a state witness; when it gave a misleading instruction on the defense of excusable homicide; and when it allowed the state to introduce a photograph of the internal phase of the autopsy on the victim. We hold that the record contains sufficient evidence to support appellant's conviction of second degree murder and find no abuse of discretion in the trial court's restriction of cross-examination of a state's witness. We find merit, however, in appellant's other two points on appeal, and we reverse and remand this case for a new trial.
The victim, Peter Sullivan, and his brother, Patrick Sullivan, lived in the Kimberly Lakes Apartments in Oakland Park, Florida. Appellant and his roommate, Michael Fitzgerald, also resided in the apartment building. An ongoing dispute existed between the Sullivans and other residents, including appellant, regarding noise in the complex. The dispute intensified over several months, culminating in the shooting of Peter Sullivan.
On March 20, 1988, at about 3:15 A.M., appellant and several friends returned to the apartment complex from a local bar. A short time later, appellant was heard banging on his car. Hearing the noise, Peter Sullivan grabbed a nightstick, went outside, approached appellant's car and struck appellant in the stomach with the nightstick. Several witnesses testified that appellant screamed for help. However, Patrick Sullivan testified that when he heard his brother cry for help, he grabbed a baseball bat, went outside and saw appellant on top of his brother, striking him with his fist. Patrick hit appellant on the head with the baseball bat, finally breaking it on the third blow. Witnesses testified they saw the Sullivans beating appellant. One witness testified that he pushed Patrick off of appellant. Appellant then went to his apartment and returned with a hunting rifle. Patrick said he saw appellant squatting with a rifle next to his roommate who also had a gun. As Peter Sullivan ran toward his apartment, appellant fired a single, fatal shot into his back from a distance of seventy-seven feet. The grand jury first indicted appellant for manslaughter, two weeks later it issued a second indictment for the same homicide, charging him with murder in the first degree. The state nolprossed the manslaughter indictment and the case proceeded to trial on the charge of first degree murder. A jury returned a verdict of guilty of the lesser included offense of murder in the second degree.
Appellant first contends that the state failed to present sufficient evidence to support a conviction of second degree murder. He argues that the facts support either manslaughter in the heat of passion after sudden provocation or manslaughter resulting from the use of excessive force to defend oneself. We disagree. The record shows that after appellant broke away from the fray, he went to his apartment and returned with a rifle. When no further threats to his physical safety were imminent, he fired the fatal shot into the victim's back, from a distance of seventy-seven feet. Although appellant testified that he feared the victim was returning to his apartment to obtain a firearm, the record contains sufficient evidence to support the jury's rejection of his self-defense claim. We find no error in the trial court's denial of appellant's motion for a judgment of acquittal.
We also find no merit in appellant's argument that the trial court improperly limited his cross-examination of Patrick Sullivan on his refusal to testify in the first grand jury proceeding. The record contains ample evidence of Patrick Sullivan's failure to cooperate with the police. His refusal to cooperate with the first grand jury would have been, at most, cumulative evidence on this point.
Next, appellant argues the trial court gave a misleading instruction on excusable homicide. We agree. After giving the introductory instruction on excusable *1248 homicide,[1] the trial court, at a later point in its instructions, gave the complete excusable homicide instruction in the following form:
Excusable homicide. An issue in this case is whether the killing of Peter Joseph Sullivan was excusable. The killing of a human being is excusable if committed by accident and misfortune.
In order to find that the killing was committed by accident and misfortune, you must find the Defendant was; one, doing a lawful act by lawful means and with usual care, and acting without any unlawful intent. Two in the heat of passion brought on by a sudden provocation sufficient to produce in the mind of an ordinary person the highest degree of anger, rage or resentment that is so intense as to overcome the use of ordinary judgment, thereby rendering a normal person incapable of reflection. Three, engaged in sudden combat.
However, if a dangerous weapon was used in the combat or the killing was done in a cruel or unusual manner, the killing is not excusable.
Appellant correctly argues that the trial court's long-form instruction, specifically the final sentence, could have misled the jury to believe the use of a deadly weapon absolutely precluded any defense of excusable homicide.
The standard jury instruction on excusable homicide has been the subject of numerous judicial decisions. In Blitch v. State, 427 So.2d 785 (Fla. 2d DCA 1983), the Second District Court of Appeal held:
A reading of parts 1 and 2 of the complete standard jury instruction on excusable homicide, as requested by appellant's trial counsel and as promised by the court, would have effectively prevented the possibility of any confusion on the jury's part as to whether the excusable homicide defense is available to one who kills a person with a dangerous weapon.
Id. at 787 (footnote omitted). The Third District Court of Appeal, in Bowes v. State, 500 So.2d 290 (Fla. 3d DCA 1986), review denied, 506 So.2d 1043 (Fla. 1987), held:
Bowes was entitled to rely on the defense of excusable homicide upon proof of any one of the three criteria in section 782.03, Florida Statutes (1985). See Colon v. State, 430 So.2d 965 (Fla. 2d DCA 1983). Also, the dangerous weapon exception, making an otherwise excusable homicide inexcusable, applies only to the sudden combat criterion. Blitch v. State, 427 So.2d 785 (Fla. 2d DCA 1983). The instruction as given, however, "may very well have been inherently misleading, because it appeared to inaccurately suggest that a killing can never be excusable if committed with a dangerous weapon." Blitch v. State, 427 So.2d at 787. (footnote omitted).
Id. at 291. Furthermore, in Parker v. State, 495 So.2d 1204 (Fla. 3d DCA 1986), review denied, 504 So.2d 768 (Fla. 1987), the district court concluded that including the disjunctive word "or," between the three elements of the introductory instruction, did not cure the error created by the trial court's failure to mention that defendant could be excused upon a finding of one of the three criteria set forth in section 782.03, Florida Statutes (1983). The First District Court of Appeal in Kingery v. State, 523 So.2d 1199 (Fla. 1st DCA 1988), also found error when the trial court gave the third part of the excusable homicide instruction without evidence of sudden combat. The court held:
We find that the disputed instructions were misleading and confusing, in that they did not pertain to the evidence produced at trial. Thus, in this case, as in Butler, [v. State, 493 So.2d 451 (Fla. 1986)] the misleading jury instructions "gave the state the benefit of a situation *1249 which was disavowed by its own witnesses." 493 So.2d at 452. Although the prosecutor in this case pressed vigorously for the sudden combat instruction, the instruction did not comport with the evidence presented by the state. The testimony of the state's witnesses established that the altercation which led to Davis's death was made up of a series of haranguing confrontations in which Davis was the aggressor. There was no sudden combat. Consequently, in the circumstances of this case, it was error to give the sudden combat instruction since, "there is a reasonable possibility that the error affected the verdict." State v. DiGuilio, 491 So.2d 1129 at 1139 [Fla. 1986].
Id. at 1206-07.
We recognize that the long-form Florida Standard Jury Instruction on excusable homicide contains a marginal note which instructs a trial judge to charge the jury with only those elements of the instruction as may be applicable to the evidence. However, the foregoing cases and the court's instruction in this case illustrate the inadequacy of this direction. There exists a need for explicit clarification that any one of the three elements, when proven, is itself sufficient to establish the defense of excusable homicide. Further, when the evidence supports the defense of sudden combat, the trial court should clearly instruct the jury that the dangerous weapon exception applies only to that defense. Here, the trial court gave a misleading instruction which could have caused the jury to conclude that appellant's use of a dangerous weapon, in an altercation not classified as sudden combat, precluded the defense of excusable homicide. We, therefore, reverse and remand this case for a new trial.
Finally, appellant contends the trial court erred when it permitted the introduction of an autopsy photograph of the victim's head. The photograph depicted the internal portion of the victim's head after an incision had been made from behind the ears to the top of the head, with the scalp rolled away revealing the flesh which underlies the hair and overlies the skull. The state argues that it introduced the photograph to show that in addition to the other injuries sustained by the victim, he had suffered a separate blow to the left side of his head, and that he received the worst of the fight. The record contains other evidence which showed that the victim had broken fingers, bruises above the nose and lacerations on the back of the head. The medical examiner could have testified that the victim had a bruise on the left side of his head and a hemorrhage to the temporalis muscle without reference to the photograph. The danger of unfair prejudice to appellant far outweighed the probative value of the photograph and the state has failed to show the necessity for its admission. On retrial, the photograph should be excluded.
Accordingly, we reverse and remand this case for a new trial.
REVERSE and REMANDED.
GUNTHER and GARRETT, JJ., concur.
NOTES
[1] Excusable homicide. The killing of a human being is excusable, and therefore lawful, when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution and without any unlawful intent, or by accident or misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner.

Fla.Std.Jury Instr. (Crim.) p. 61 (1981 ed.)